O

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA SANDOVAL,<br><br>        Plaintiff,<br><br>        v.<br><br>CAROLYN W. COLVIN,[1]<br>Acting Commissioner of Social<br>Security,<br><br>        Defendant. | NO. CV 13-0482-MAN<br><br>MEMORANDUM OPINION<br><br>AND ORDER |

Plaintiff filed a Complaint on January 25, 2013, seeking review of a decision by the Social Security Commissioner ("Commissioner") that plaintiff ceased to be eligible for a period of disability ("POD") and disability insurance benefits ("DIB") on May 1, 2010.  On February 27, 2013, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge.  The parties filed a Joint Stipulation on January 16, 2014, in which: plaintiff seeks an order reversing the Commissioner's decision and awarding benefits or, alternatively, remanding for further administrative proceedings; and the Commissioner requests that her decision be affirmed or, alternatively, remanded for further administrative proceedings.

---

[1]     Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration on February 14, 2013, and is substituted in place of former Commissioner Michael J. Astrue as the defendant in this action.  (*See* Fed. R. Civ. P. 25(d).)

The Court has taken the parties' Joint Stipulation under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On June 24, 2002, plaintiff, filed an application for a POD and DIB in which she alleged an inability to work since September 8, 1998. (*See* Administrative Record ("A.R.") 110.) By decision dated June 12, 2004, Administrative Law Judge Barry S. Brown ("ALJ Brown") determined that plaintiff, who was born on March 12, 1963 (*id.* 34), had the following severe impairments: "Major Depressive Disorder, Recurrent, Moderate without psychotic features[;] Generalized Anxiety Disorder[;] second degree burns to both feet and ankles[;] low back lumbar radiculopathy and neck radiculopathy." (*Id.* 111.) ALJ Brown found that plaintiff's impairments precluded her from performing even sedentary activity on a sustained and reliable basis from September 8, 1998, plaintiff's alleged onset date of disability, through June 14, 2000. (*Id.* 113.) ALJ Brown also found that from June 15, 2000, through June 12, 2004, the date of ALJ Brown's decision, plaintiff's Major Depressive Disorder and Generalized Anxiety Disorder met the criteria of Medical Listings "12.04 [Affective Disorder] and 12.06 [Anxiety Disorder,]" respectively. (*Id.*) Accordingly, ALJ Brown determined that plaintiff had been under a disability since September 8, 1998, her alleged onset date of disability, and was entitled to POD and DIB. (*Id.*)

The Social Security Administration (the "SSA") re-evaluated[2] plaintiff's eligibility for benefits in 2010, and in a decision dated May 18, 2010, determined that plaintiff had medically improved as of May 1, 2010. (A.R. 12-25.) The SSA determined that plaintiff's benefits should cease on the last day of July 2010. (*Id.* 125.)   Plaintiff requested reconsideration of the SSA's

---

[2]   When a claimant has been granted benefits, the SSA "evaluate[s] her impairment(s) from time to time to determine if [she is] still eligible for disability cash benefits." 20 C.F.R. § 404.1589. These recurring evaluations are called "continuing disability reviews." *Id.*; Flaten v. Sec'y of Health and Hum. Servs., 44 F.3d 1453, 1460 (9th Cir. 1995). Because a presumption of continuing disability arises once a claimant has been identified as disabled, the Commissioner has the burden of producing evidence to meet or rebut the presumption. *See* Bellamy v. Sec'y of Health and Human Servs., 755 F.2d 1380, 1381 (9th Cir. 1985).

1   determination.  (*Id.* 129.)  After a disability hearing by a Disability Hearing Officer, the SSA's

2   "determination was upheld upon reconsideration."  (*Id.* 23, 130-37.)  Plaintiff appealed this

3   determination.  (*Id.* 23.)

4

5   On June 15, 2011, plaintiff, who was represented by counsel, testified at a hearing before

6   Administrative Law Helen E. Hesse (the "ALJ").  (A.R. 52, 59-64, 73-80.)  Vocational expert Alan

7   Boroskin ("VE") and two medical experts -- Dr. Samuel Landau, a physician, and Dr. Joseph

8   Malancharuvil, a board-certified clinical psychologist -- also testified.  (*Id.* 52, 55-59 (Dr. Landau's

9   testimony), 64-73 (Dr. Malancharuvil's testimony), 80-83 (VE's testimony).)

10

11   On August 4, 2011, the ALJ issued an unfavorable decision, finding, *inter alia*, that plaintiff

12   had medically improved as of May 1, 2010, and as a result, her disability ended as of May 1, 2010.

13   (A.R. 23-36.)  The Appeals Council denied plaintiff's request for review of the ALJ's decision.  (*Id.*

14   1-6).  That decision is now at issue in this action.

15

16   **SUMMARY OF ADMINISTRATIVE DECISION**

17

18   In her August 4, 2011 decision, the ALJ found that, following ALJ Brown's 2004 decision

19   awarding benefits, plaintiff had developed obesity but had otherwise continued to have the same

20   severe impairments, namely "depressive disorder; anxiety disorder; lumber and cervical disorder;

21   history of second-degree burns."  (A.R. 25, 28.)  However, the ALJ determined that, as of May 1,

22   2010, plaintiff's impairments no longer met or equaled one of the listed impairments in 20 C.F.R.

23   Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526).  (*Id.* 26.)

24   Specifically, the ALJ found that, as of May 1, 2010, the severity of plaintiff's impairments had

25   decreased to such an extent that they neither met the criteria of Medical Listings 12.04 and 12.06

26   nor precluded plaintiff from performing sedentary activity on a sustained and reliable basis.  (*Id.*

27   27.)

28   After reviewing the record, the ALJ also determined that, as of May 1, 2010, plaintiff had

1    the residual functional capacity ("RFC") to perform "less than light work as defined in 20 CFR [§]
2    404.1567(b)." (A.R. 28.)  Specifically, the ALJ determined that plaintiff is limited as follows:

4        [can] lift/carry 10 pounds frequently and 20 pounds occasionally; stand/walk for six
5        hours of an eight hour day; sit for six hours of an eight [h]our day; climb stairs,
6        stoop, and bend occasionally; and [is] precluded from operating fast moving or
7        hazardous machinery; [is] restricted from highly high [sic] pace work such as rapid
8        assembly; and [is] precluded from safety related operations; limited to moderately
9        complex tasks, up to 4 to 5 step instructions in [an] object-oriented setting.

11   (*Id.*)

13   Ultimately, the ALJ found that, as of May 1, 2010, plaintiff was able to perform her past
14   relevant work as a housekeeper, DOT 323.687-014, and a janitor, DOT 381.687-014, as she
15   actually performed it.  (A.R. 34.)    In addition, the ALJ determined that, as of May 1, 2010,
16   plaintiff could perform jobs that exist in significant numbers in the national economy, namely
17   inspector of wares, DOT 727.687, and street cleaner, DOT 955.687-018.  (*Id.* 35.)  Accordingly,
18   the ALJ concluded that "[plaintiff]'s disability ended as of May 1, 2010." (*Id.*)

20                                **STANDARD OF REVIEW**

22   Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine
23   whether it is free from legal error and supported by substantial evidence in the record as a whole.
24   Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007).  "Substantial evidence is 'more than a mere
25   scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might
26   accept as adequate to support a conclusion.'"  Gutierrez v. Comm'r of Soc. Sec., 740 F.3d 519,
27   522-23 (9th Cir. 2014) (internal citations omitted).  "Even when the evidence is susceptible to
28   more than one rational interpretation, we must uphold the ALJ's findings if they are supported by

                                          4

1  inferences reasonably drawn from the record."  Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir.

2  2012).

3

4  Although this Court cannot substitute its discretion for that of the Commissioner, the Court

5  nonetheless must review the record as a whole, "weighing both the evidence that supports and

6  the evidence that detracts from the [Commissioner's] conclusion."  Lingenfelter v. Astrue, 504

7  F.3d 1028, 1035 (9th Cir. 2007) (internal quotation marks and citation omitted); Desrosiers v.

8  Sec'y of Health and Hum. Servs., 846 F.2d 573, 576 (9th Cir. 1988).  "The ALJ is responsible for

9  determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities."

10  Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

11

12  The Court will uphold the Commissioner's decision when the evidence is susceptible to

13  more than one rational interpretation.  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

14  However, the Court may review only the reasons stated by the ALJ in his decision "and may not

15  affirm the ALJ on a ground upon which he did not rely."  Orn, 495 F.3d at 630; see also Connett

16  v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003).  The Court will not reverse the Commissioner's

17  decision if it is based on harmless error, which exists only when it is "clear from the record that

18  an ALJ's error was 'inconsequential to the ultimate nondisability determination.'"  Robbins v. Soc.

19  Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (quoting Stout v. Comm'r of Soc. Sec., 454 F.3d

20  1050, 1055 (9th Cir. 2006)); see also Carmickle v. Comm'r of Soc. Sec., 533 F.3d 1155, 1162 (9th

21  Cir. 2008).

22

23  **DISCUSSION**

24

25  Plaintiff claims that the ALJ erred in failing to:  (1) properly consider the opinions of

26  examining physicians Dr. Grogan and Dr. Curtis; (2) overcome the presumption of plaintiff's

27  continued disability; (3) properly consider her subjective complaints; (4) properly consider the

28  combined effects of her impairments in determining her RFC; and (5) pose a complete

1   hypothetical to the VE.  (Joint Stipulation ("Joint Stip.") at 3.)

2

3   **I.   The ALJ Gave Specific And Legitimate Reasons For Rejecting The**
4   **Opinions Of Examining Physicians Dr. Curtis And Dr. Grogan.**

5

6   **A.   Legal Standard**

7

8   In disability benefits cases, physicians may render medical opinions or provide opinions on
9   the ultimate issue, namely the claimant's ability to perform work.  Garrison v. Colvin, 759 F.3d
10  995, 1012 (9th Cir. 2014) (citing Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998)).  It is the
11  responsibility of the ALJ to resolve conflicts in medical testimony and analyze evidence.
12  Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989).  As a general rule, however, the opinion
13  of a treating physician is entitled to greater weight than that of an examining physician, the
14  opinion of an examining physician is entitled to greater weight than that of a non-examining
15  physician, and the weight afforded a non-examining physician's testimony depends on the degree
16  to which he provided supporting explanations for his opinions.  Garrison, 759 F.3d at 1012 (citing
17  Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008); *see also* 20 C.F.R. §
18  404.1527(c).

19

20  When a treating or examining physician's opinion is not contradicted by another physician,
21  it may be rejected only for "clear and convincing" reasons.  Lester v. Chater, 81 F.3d 821, 830
22  (9th Cir. 1995).  When contradicted by another doctor, a treating or examining physician's opinion
23  is still owed deference and may only be rejected if the ALJ provides "specific and legitimate"
24  reasons supported by substantial evidence in the record.  Garrison, 759 F.3d at 1012; Orn, 495
25  F.3d at 632.  An ALJ can satisfy the "substantial evidence" requirement by "setting out a detailed
26  and thorough summary of the facts and conflicting clinical evidence, stating his interpretation
27  thereof, and making findings."  Garrison, 759 F.3d at 1012 (quoting Reddick, 157 F.3d at 725).
28  "The ALJ must do more than state conclusions. He must set forth his own interpretations and

1    explain why they, rather than the doctors', are correct." *Id.*

2

3        **B.     The ALJ Did Not Err In Discounting Dr. Curtis' Assessment Of**

4        **Plaintiff's Mental Impairments And Limitations**

5

6        On January 20, 2011, examining psychiatrist Thomas Curtis, M.D., completed a

7    "Consultative Psychological Evaluation And Report With Psychological Test Results" based on a

8    psychiatric evaluation he conducted of plaintiff on January 17, 2011.  (A.R. 946-66.)  In the

9    report, Dr. Curtis detailed:  his general observations; plaintiff's description of her symptoms and

10   medical history; and plaintiff's description of her family, marital, social, academic, and occupational

11   history.  (*Id.* 946-53.)  Dr. Curtis also performed a mental status examination of plaintiff,

12   psychological testing, and a review of plaintiff's medical records.  (*Id.* 954-60.)  He diagnosed

13   plaintiff with "depressive disorder not otherwise specified with anxiety, post-traumatic reaction,

14   panic attacks and psychotic features with voices and mental confusion (also possible somatic

15   delusions" and "psychological factors affecting medication condition." (*Id.* 960.)  Dr. Curtis also

16   assessed plaintiff with a GAF score of 41.[3]  (*Id.* 961.)  He opined that plaintiff would have

17   moderate impairment in her ability to:  understand and remember very short simple instructions;

18   carry out very short and simple instructions; ask simple questions or request assistance; and be

19   aware of normal hazards and take appropriate precautions.  (*Id.* 963-65.)  Dr. Curtis found that

20   plaintiff was markedly limited in all other areas of understanding and memory, sustained

21   concentration and persistence, social interaction, and adaptation.  (*Id.*)  Finally, Dr. Curtis opined

22   that plaintiff's impairments and limitations have "lasted and are expected to last for a continuous

23   period of time into the permanent future." (*Id.* 965.)  The ALJ gave "little weight" to Dr. Curtis'

24   _____

25        [3]      A GAF score is the clinician's judgment of the individual's overall level of functioning.

26   It is rated with respect only to psychological, social, and occupational functioning, without regard
     to impairments in functioning due to physical or environmental limitations. DIAGNOSTIC AND
27   STATISTICAL MANUAL OF MENTAL DISORDERS, at 32 (4th Ed. 2000).  A GAF rating of 41–50
     reflects "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent
28   shoplifting) OR any serious impairment in social, occupational, or school functioning (*e.g.*, no
     friends, unable to keep a job)." *Id.* at 34.

opinion, because it was:  contradicted by the testimony of Dr. Malancharuvil;[4]  inconsistent with the medical evidence of record; inconsistent with plaintiff's daily activities; and relied heavily on plaintiff's subjective complaints.  (A.R. 32.)  Because Dr. Curtis' opinion was contradicted by Dr. Malancharuvil's assessment, the ALJ was only required to articulate specific and legitimate for rejecting it.  See Garrison, 759 F.3d at 1012.  As explained below, the ALJ satisfied this standard.

### 1.    Plaintiff's Lack Of Treatment

An ALJ may discredit treating physicians' opinions that are unsupported by the record as a whole or by objective medical findings.  Batson v. Comm'r, Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004).  Here, plaintiff submitted no medical records for the period between 2004 and 2008, and she does not dispute that she received no medical treatment during that time.  (A.R. 26; see also id. 282-83, 300-02.)  Further, as noted by the ALJ, there is no evidence that plaintiff received "active treatment," such as therapy sessions, counseling, or hospitalizations, for her mental conditions after her favorable disability determination in 2004.  (A.R. 27, 29.)  The treatment notes that plaintiff submitted for the period between 2008 and 2010 indicate that plaintiff's "mood and affect were normal during numerous office visits." (Id. 29, 501, 507,  565,  569, 573, 577, 579.)  Those treatment notes also show that plaintiff only received routine or minimal care for her physical health (i.e., rash, nasal congestion, sore throat, urinary tract infection, sinusitis) during that time period.  (See generally, id. 494-526, 561-80.)  Plaintiff's failure to seek treatment during that time for her mental health issues is inconsistent with, and seriously undermines, the extreme mental limitations assessed by Dr. Curtis and, thus, constitutes a specific and legitimate reason to reject Dr. Curtis' opinion.

---

[4]    Dr. Malancharuvil testified that plaintiff's "mental impairments have improved because she no longer equaled or met listing 12.04 or 12.06" and that plaintiff "is limited to moderately complex tasks of up to four or five steps instructions in an object-oriented setting; and precluded from fast/hazardous machinery, fast pace work such as rapid assembly, and safety related operations." (A.R. 27 (ALJ's discussion of Dr. Malancharuvil's testimony); see also id. 64-73.)

### 2. Plaintiff's Activities Of Daily Living And Social Interaction

The ALJ next rejected Dr. Curtis' opinion because it was inconsistent with plaintiff's activities of daily living and social interaction. (A.R. 32.) Again, Dr. Curtis opined that plaintiff was either moderately or markedly limited in all areas with respect to understanding and memory, sustained concentration and persistence, social interaction, and adaptation. (*Id.* 963-65.) However, plaintiff reported on her November 17, 2009 continuing disability review report that she did not have any difficult understanding/following directions, completing tasks, or getting along with people. (*Id.* 355.) Five months later, plaintiff reported to Dr. Ernest A. Bagner III, a board eligible psychiatrist, that she is able to manage money, run errands, and shop, and she has good relationships with her family and friends. (*Id.* 533, 535.) Thus, plaintiff's description of her abilities and regular activities conflicts with the severe mental limitations assessed by Dr. Curtis. This contradiction provided a further proper basis for rejecting Dr. Curtis' opinion. *Cf.* Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 601-02 (9th Cir. 1999) (upholding rejection of physician's conclusion that claimant suffered from marked limitations based on, in part, claimant's reported activities of daily living contradicted that conclusion).

### 3. Dr. Curtis' Findings Were Based On Plaintiff's Subjective Complaints And On Testing Prone To Manipulation

The ALJ's last reason for rejecting Dr. Curtis' opinion was that Dr. Curtis relied "heavily on the subjective report of symptoms and limitations provided by [plaintiff], and seemed uncritically to accept as true most, if not all, of what [plaintiff] reported." (A.R. 32); *see also* Ryan, 28 F.3d at 1206-07 ("As we have repeatedly held, an ALJ may discount a medical opinion that relies on subjective statements rather than clinical findings."). The Court agrees with the ALJ that, in determining plaintiff's mental limitations, Dr. Curtis relied more heavily on plaintiff's self-reporting than he did on any objective clinical findings of his own. Dr. Curtis devoted half of his report to reciting plaintiff's descriptions of her symptoms and personal history. (A.R. 946-53.) Dr. Curtis

1   then reviewed plaintiff's medical records but identified no records showing that plaintiff

2   complained of, or received treatment -- besides medication -- for depression or anxiety after the

3   Commissioner's last favorable decision.  (*Id.* 960.)  Accordingly, Dr. Curtis could not have based

4   his conclusion that plaintiff has extreme mental limitations on his review of her medical records.

5

6       Dr. Curtis did perform a series of psychological tests on plaintiff, but the ALJ found that

7   these tests were "mostly self-rating," and therefore, their results were "within the control of the

8   [plaintiff]."  (A.R. 32); *see also* Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (ALJ

9   was free to disregard an examining physician's opinion that was based "only on [the plaintiff's]

10  subjective complaints and on testing within [the plaintiff's] control").  In reaching this conclusion,

11  the ALJ relied on Dr. Malancharuvil's testimony that the Beck depression inventories administered

12  by Dr. Curtis were an inappropriate tool for a disability evaluation, because they are "totally under

13  the control of the person who rates it."  (A.R. 67-68.)  The ALJ also relied on Dr. Malancharuvil's

14  testimony that plaintiff's performance on the MMPI (Minnesota Multiphasic Personality Inventory

15  2) was a better indicator of plaintiff's mental health, because unlike the Beck depression

16  inventories, the MMPI could not be easily manipulated.  (*See* A.R. 30.)  Significantly, plaintiff

17  received an invalid score on the MMPI, which suggested she was overstating the severity of her

18  symptoms.  (*See* A.R. 30 (plaintiff's score on the MMPI was indicative of malingering); *id.* 70 (Dr.

19  Malancharuvil's testimony that, if plaintiff's MMPI test results were to be believed, she was

20  "completely out of her mind"); *id.* 957 (Dr. Curtis' statement that one possible explanation for

21  plaintiff's score on the MMPI is "purposeful manipulation for secondary gain (malingering)").

22

23      Because Dr. Malancharuvil's interpretation of the results of Dr. Curtis' tests was supported

24  by independent evidence in the record -- namely, plaintiff's statements regarding her social

25  interactions and activities of daily living and her failure to obtain treatment other than medication

26  after the Commissioner's last favorable decision -- the ALJ was entitled to credit Dr.

27  Malancharuvil's interpretation of the results of Dr. Curtis' test results.  *See* Tonapetyan, 242 F.3d

28  at 1149 ("Although the contrary opinion of a non-examining medical expert does not alone

10

1    constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion,

2    it may constitute substantial evidence when it is consistent with other independent evidence in

3    the record.")  Thus, the ALJ did not err in rejecting Dr. Curtis' assessment of plaintiff's mental

4    limitations on the grounds that it was based on plaintiff's subjective complaints and on clinical

5    findings that were susceptible to manipulation.

6

7    For these reasons, the ALJ's decision to discount Dr. Curtis' opinion was proper.

8

9        **C.    The ALJ Did Not Err In Discounting Dr. Grogan's Assessment Of**

10            **Plaintiff's Physical Impairments And Limitations**

11

12    Plaintiff also contests the ALJ's decision not to accord significant weight to the opinion of

13    examining physician Thomas J. Grogan, an orthopedic surgeon.  The ALJ reasoned that Dr.

14    Grogan's opinion was not entitled to great weight, because it was contradicted by the opinion of

15    consulting physician Dr. Landau[5] and was:  (1) inconsistent with plaintiff's lack of treatment; (2)

16    conclusory; (3) inconsistent with plaintiff's reported daily activities; and (4) relied heavily on

17    plaintiff's subjective complaints.  (A.R. 32.)

18

19    On June 2, 2010, examining physician Dr. Grogan completed a "Physical Examination

20    Report."  (A.R. 554-55.)  In his report, he noted that, based *inter alia* on a physical examination

21    of plaintiff and x-rays, plaintiff suffered from:  degenerative disc disease, cervical and lumbar;

22    history of bilateral foot causalgia status post burn with skin grafting; history of chronic headaches;

23    history of atherosclerotic cardiovascular disease with hypercholesterolemia; and history of

24    depression and anxiety.  (*Id.* 555.)  Dr. Grogan opined that plaintiff was "physically incapable of

25    ─────────────

26    [5]    Dr. Landau testified that "based on her physical impairments, the claimant now has
       the residual functional capacity to perform less than a full range of light work.  Specifically . . . the
27     claimant is able to lift/carry 10 pounds frequently and 20 pounds occasionally; stand/walk for six
       hours of an eight hour day; sit for six hours of an eight [h]our day; stoop and bend occasionally;
28     and precluded from balancing, climbing ladders, and working at heights."  (A.R. 27-28 (the ALJ's
       discussion of Dr. Landau's testimony); *see also id.* 52, 55-59).)

returning to [work as a housekeeper] and should be permanently precluded from that type of employment in the future." (*Id.*)

Dr. Grogan also completed a "Physical Capacities Evaluation" that same day. (A.R. 559.) In that evaluation, he opined that plaintiff could sit for three consecutive hours, stand for two consecutive hours, and walk for one hour. (*Id.*) In an entire eight hour day, plaintiff could sit for a total of five hours, stand for a total of four hours, and walk for a total of three hours. (*Id.*) Plaintiff could occasionally lift and carry up to five pounds. (*Id.*) She could do simple grasping and fine manipulation, but no pushing and/or pulling. (*Id.*) Plaintiff could not, however, perform repetitive movements as in pushing and pulling of leg controls. (*Id.*) Dr. Grogan also opined that plaintiff could occasionally bend and reach, but could not squat, crawl, and climb. (*Id.*) According to Dr. Grogan, plaintiff was also moderately restricted from activities involving unprotected heights, being around moving machinery, and driving automotive equipments, and she was mildly limited in exposure to marked changes in temperature and humidity and exposure to dust, fumes, and gases. (*Id.*)

### 1.    Plaintiff's Lack Of Treatment

The ALJ first rejected Dr. Grogan's limitations regarding plaintiff's physical impairments, because "[o]ther than records of [plaintiff] taking Ibuprofen for pain, [plaintiff's] treating records on file, which only date back to 2008, do not indicate any complaints of or treatment for her severe impairments." (A.R. 27, 31, 494-526, 561-80.) Further, the record indicates that, since 2008, plaintiff's "Active Problem List" has been limited to anxiety, depression, sinusitis, TMJ disorder, GERD, gastritis, eczema, prediabetes, obesity, and a urinary tract infection. (*Id.* 27, 31, 500, 506, 564, 568, 570.) As for the second-degree burns on plaintiff's feet and ankles, the ALJ observed that there is no record that plaintiff received treatment for these injuries after the last favorable disability determination. (*Id.* 30.) To the contrary, plaintiff stated that she had *recovered* from the skin grafting. (*Id.* 30; *see also id.* 953 (plaintiff told Dr. Curtis that she

12

1  recovered from the skin grafting procedures).)  In sum, Dr. Grogan's physical limitations were

2  inconsistent with plaintiff's treating notes, and this was a specific and legitimate reason to reject

3  his opinion.

4

5          **2.      Dr. Grogan's Opinion Is Conclusory**

6

7          The ALJ's second reason for rejecting Dr. Grogan's opinion -- to *wit*, that his opinion is

8  "quite conclusory, providing very little explanation of the evidence relied on in forming that

9  opinion" -- is also legitimate.  (A.R. 32); *see also* Bray v. Comm'r of Soc. Sec., 554 F.3d 1219,

10 1228 (9th Cir. 2009) ("ALJ need not accept the opinion of any physician, including a treating

11 physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.");

12 Connett, 340 F.3d at 875 ("ALJ properly found that [the physician's] extensive conclusions

13 regarding [the claimant's] limitations are not supported by his own treatment notes.  Nowhere do

14 his notes indicate reasons why [the physician would limit the claimant to a particular level of

15 exertion].").  Here, Dr. Grogan performed a physical examination of plaintiff and lumbar and

16 cervical spine x-rays. (A.R. 554-58.)  However, he articulated limitations that conflicted with his

17 general observations of plaintiff's strength and range of motion, and he provided no rationale for

18 doing so.  Specifically, Dr. Grogan found that:  plaintiff had a full range of motion in her shoulders,

19 elbows, wrists, and hands; she scored a 5/5 on the motor examination for all groups tested;

20 plaintiff's sensation was intact to touch; and plaintiff's grip strength was 15/15 on the right side

21 and 15/10 on the left.  (A.R. 554.)  Dr. Grogan nevertheless opined that plaintiff could: only

22 occasionally lift and carry up to five pounds; occasionally reach; and could not do any pushing and

23 pulling. (*Id.*)  Similarly, Dr. Grogan found, *inter alia*, that plaintiff's gait was "normal to heel and

24 toe without a crutch, cane, or orthoses[;]" plaintiff had a full range of motion in her hips, knees,

25 ankles, and subtalar joints; and motor examination in plaintiff's lower extremities was rated at 5/5

26 in all groups tested. (*Id.* 554-45.)  Again, however, Dr. Grogan seemed to overstate plaintiff's

27 limitations in the Physical Capacities Evaluation, restricting her to no repetitive movements (such

28 as pushing and pulling leg controls) and no squatting, crawling, or climbing. (*Id.* 559.)  Because

1   Dr. Grogan offered no rationale for his assessment of plaintiff's limitations and none was apparent

2   from his observations of plaintiff's strength and abilities, the ALJ did not err by discounting Dr.

3   Grogan's opinion on the grounds that it was conclusory.

4

5               **3.      Plaintiff's Activities Of Daily Living**

6

7           The ALJ's third reason for rejecting Dr. Grogan's opinion -- to *wit*,  because his opinion was

8   inconsistent with plaintiff's activities of daily living -- is also specific and legitimate. (A.R. 31); *see*

9   *also* Morgan, 169 F.3d at 601-02 (ALJ permissibly rejected treating physician's opinion in part

10  because it was inconsistent with plaintiff's daily activities); Rollins v. Massanari, 261 F.3d 853, 856

11  (9th Cir. 2001) (inconsistency between treating physician's assessment of plaintiff's functional

12  limitations and plaintiff's level of activity was an adequate reason for disregarding the treating

13  physician's opinion).  In November 2009, plaintiff reported that her typical day consists of:  taking

14  her son to school and picking him up from school, doing chores, and occasionally going to church.

15  (*Id.* 353.)  In April 2010, plaintiff reported that she is able to dress and bathe herself, run errands,

16  shop, and manage money.  (*Id.* 533, 535.)  Plaintiff's son also reported that "she goes to church

17  on her own" and occasionally "drives the car to the market," though she is not allowed to drive

18  alone.  (*Id.* 946.)  Thus, the ALJ was entitled to reject Dr. Grogan's opinion to the extent they

19  imposed highly restrictive functional limitations that were inconsistent with plaintiff's daily

20  activities. *See* Morgan, 169 F.3d at 601-02; Rollins, 261 F.3d at 86 *see also* Batson, 359 F.3d at

21  1193 (when evidence supports more than one rational interpretation, courts defer to the

22  Commissioner's decision).  Further, to the extent that the ALJ may have erred in citing plaintiff's

23  daily activities as a reason for discrediting Dr. Grogan's opinion, the error was harmless, because

24  the ALJ presented other specific and legitimate reasons for her credibility determination.  *Cf.*

25  Carmickle, 533 F.3d at 1162-63.

26

27

28

1

2

### 4.    Dr. Grogan's Reliance On Plaintiff's Subjective Complaints

3    Finally, the ALJ rejected Dr. Grogan's opinion, because he "apparently relied quite heavily

4    on the subjective report of symptoms and limitations provided by [plaintiff]."  (A.R. 32.)

5    However, it appears that Dr. Grogan did not consider plaintiff's subjective complaints as a basis

6    for his opinion.  (*Id.* 554-60.)  Nonetheless, as stated above, the ALJ provided other specific and

7    legitimate reasons for rejecting Dr. Grogan's opinion, and, therefore, her error in finding that Dr.

8    Grogan's opinion was based primarily on plaintiff's subjective complaints was harmless and did

9    not affect the ultimate disability determination.  *Cf.* Carmickle, 533 F.3d at 1162-63.

10

11    Thus, the Court finds that the ALJ gave legally sufficient reasons for rejecting the opinions

12    of both Dr. Curtis and Dr. Grogan.

13

14    **II.    The ALJ's Finding That Plaintiff's Mental Impairments Have Medically**

15    **Improved Is Supported By Substantial Evidence.**[6]

16

17    "Once a claimant has been found to be disabled, . . . a presumption of continuing disability

18    arises in [her] favor[, and the Commissioner] bears the burden of producing evidence sufficient

19    to rebut the presumption of continuing disability."  *See* Bellamy v. Sec'y of Health and Hum Servs.,

20    755 F.2d 1380, 1381 (9th Cir. 1985).  Benefits cannot be terminated unless substantial evidence

21    demonstrates medical improvement in the claimant's impairment such that the claimant becomes

22    able to engage in substantial gainful activity.  *See* 42 U.S.C. § 423(f); 20 C.F.R. § 404.1594;

23    Murray v. Heckler, 722 F.2d 499, 500 (9th Cir. 1983).

24

25    Medical improvement is defined as "any decrease in the medical severity of [a claimant's]

26

27        [6]    Plaintiff does not argue in this claim that the ALJ erred in finding that her physical
28    impairments had medically improved.  (*See* Joint Stip. at 22- 25.)  Thus, the Court does not
address the issue.

impairment(s) which was present at the time of the most recent favorable decision that [the claimant was] disabled or continued to be disabled." 20 C.F.R. § 404.1594(c)(1).  To determine whether there has been medical improvement, the claimant's current condition must be compared with the claimant's condition at the time of the most recent favorable determination or decision.  20 C.F.R. § 404.1594(c)(2).  The most recent favorable determination or decision is the latest final determination or decision involving a consideration of the medical evidence and whether the claimant was disabled or continued to be disabled.  20 C.F.R. § 404.1594(b)(7).

In assessing whether plaintiff's condition medically improved, the ALJ compared plaintiff's medical condition on June 12, 2004, the date of the Commissioner's most recent favorable decision, to plaintiff's medical condition at the time of her decision, August 4, 2011.  After carefully reviewing the record as a whole, the Court concludes that the ALJ's finding of medical improvement in plaintiff's mental condition is supported by substantial evidence.

As noted above, by decision dated June 12, 2004, ALJ Brown determined that plaintiff's impairments precluded the performance of even sedentary activity on a sustained and reliable basis from September 8, 1998 to June 14, 2000 and met the criteria of Medical Listings 12.04 and 12.06 from June 14, 2000 through the date of his decision. (A.R. 113.)  In finding that plaintiff's condition had improved since ALJ Brown's decision, the ALJ relied on:  (1) the lack of treatment records demonstrating any objective findings or diagnostics regarding her alleged impairments after ALJ Brown's decision and (2) the opinions of medical experts Dr. Malancharuvil and Dr. Landau. (*Id.* 27-28.)

Plaintiff argues that the ALJ erred in finding that she had medically improved, because there were objective findings or diagnostics that demonstrated that she continued to suffer from her mental impairments after the Commissioner's last favorable decision.  (Joint Stip. at 22-25.)  In support of her argument, plaintiff relies primarily on Dr. Curtis' opinion. (*Id.*)  However, as discussed above, the ALJ properly rejected the opinion of Dr. Curtis.  Plaintiff also cites:  a 2009

1  treatment note indicating that her depression and anxiety were active problems; consultative

2  psychiatrist Dr. Bagner's diagnosis of depressive disorder; and Dr. Bagner's observation that

3  plaintiff's mood and affect were congruent with her reported depression.  (Joint Stip. at 22, 30.)

4  However, contrary to plaintiff's argument, "the mere existence of an impairment is insufficient

5  proof of a disability."  Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993); see also 20 C.F.R.

6  § 416.920(f), (g) (claimant's impairment(s) must prevent her from doing her past relevant work

7  and from making an adjustment to any other work).

8

9      Furthermore, the ALJ's determination that plaintiff had achieved medical improvement as

10  of May 1, 2010, is supported by substantial evidence.  First, the ALJ correctly observed that

11  plaintiff's "treatment records fail to show any objective findings or diagnostics regarding her

12  mental impairments after the CPD."  (A.R. 27.)  Indeed, the "only significant medical evidence

13  [plaintiff] submitted regarding her mental condition after 2004 was [the] consultative report

14  [completed] by Dr. Curtis," whose opinion the ALJ properly rejected.  (Id. 27, 30, 494-526, 561-

15  80.)  Moreover, "other than some medication, [] there is no evidence of other treatment such as

16  therapy sessions, counseling, and hospitalizations."  (Id. 27.)  Rather, the treatment notes

17  submitted by plaintiff reveal that plaintiff's "mood and affect were normal during numerous office

18  visits."  (See e.g. 501, 507, 565, 569, 573, 577, 579.)  The ALJ was entitled to rely on the lack

19  of treatment and treating notes regarding plaintiff's impairments in finding that she had medically

20  improved after the Commissioner's last favorable decision.  See Flaten v. Sec'y of Health and Hum.

21  Servs., 44 F.3d 1453, 1464 (9th Cir. 1995) (holding that the ALJ did not err in rejecting the

22  claimant's continuing disability claim based, in part, on a lack of medical care during the relevant

23  period).

24

25      In addition, the ALJ properly cited Dr. Malancharuvil's opinion that plaintiff had improved

26  after the Commissioner's last favorable decision.  (A.R. 27-28, 69.)  Specifically, Dr. Malancharuvil

27  testified that although plaintiff suffered from "depressive disorder," "psychological reactions to

28  physical sensations, including pain," and "anxiety disorder," she did not meet or equal the

1    requirements of any listing and had "made improvements since the original decision." (*Id.* 69.)

2    Dr. Malancharuvil based his opinion that plaintiff had medically improved on the lack of significant

3    psychiatric treatment in plaintiff's medical records and on a report by examining physician, Ernest

4    A. Bagner III, a board eligible psychiatrist.[7] (*Id.* 66-69.) Dr. Malancharuvil also took into account

5    Dr. Curtis' report but, as explained above, found that Dr. Curtis' report was "significantly

6    problematic" and "extremely biased," because it was based on plaintiff's self-reporting and on

7    testing that was susceptible to manipulation by plaintiff and was inconsistent with the independent

8    evidence in the record. (*Id.* 67-69.) Thus, the ALJ did not err by finding medical improvement

9    partly on the basis of Dr. Malancharuvil's opinion, because Dr. Malancharuvil's opinion was

10   supported by independent clinical findings and constituted substantial evidence of medical

11   improvement. *See* Tonapetyan, 242 F.3d at 1149; Andrews, 53 F.3d at 1041 (when an ALJ rejects

12   an examining physician's opinion in reliance on the testimony of a nonexamining advisor, the

13   nonexaminer advisor's findings may be treated as substantial evidence when they are supported

14   by, and consistent with, other evidence in the record).

16       In sum, the ALJ's reasons for finding medical improvement were supported by substantial

17   evidence in the record and warranted a finding of nondisability as of May 2010.

19   **III.    The ALJ Set Forth Clear And Convincing Reasons For Finding**

20   **Plaintiff's Testimony Regarding Her Subjective Symptoms And Pain**

21   **To Be Not Credible.**

23       Plaintiff also argues that the ALJ erred in failing to credit her testimony regarding her

---

25   [7]    On April 28, 2010, psychiatrist Ernest A. Bagner III, M.D., conducted a complete
26   psychiatric evaluation on plaintiff. (A.R. 532-35.) After eliciting information from plaintiff and
     conducting a mental status examination of plaintiff, Dr. Bagner diagnosed plaintiff with depressive
     disorder, not otherwise specified. (*Id.* 534.) He then opined that plaintiff would have "no
27   limitations interacting with supervisors, peers and the public or completing simple tasks. (*Id.*
     535.) Plaintiff would have "mild limitations maintaining concentration and attention and
28   completing tasks" and "mild to moderate limitations handling normal stresses at work and
     completing a normal work week without interruption." (*Id.*)

symptoms and pain.  (Joint Stip. 30-37.)  In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ must engage in a two-step analysis.  Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009).  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  Id. (quoting Lingenfelter, 504 F.3d at 1036 (internal citations and quotation marks omitted)).  The claimant is not required to show that her impairment "could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom."  Vasquez, 572 F.3d at 591 (internal citation and quotation marks omitted).  If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives "specific, clear and convincing reasons" for the rejection.  Id.  The factors to be considered in weighing a claimant's credibility include, inter alia:  (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between the claimant's testimony and her conduct; (3) the claimant's daily activities; and (4) the claimant's unexplained, or inadequately explained, failure to seek treatment.  Orn, 495 F.3d at 636.

Here, the ALJ cited no evidence of malingering by plaintiff and concluded that "[plaintiff]'s medically determinable impairments could have reasonably be expected to produce the alleged symptoms."  (A.R. 30.)  Nevertheless, the ALJ determined that plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not credible to the extent they were inconsistent with the ALJ's RFC assessment.  (Id.)  Because the ALJ found no evidence of malingering, the ALJ was required to articulate "clear and convincing" reasons for discounting plaintiff's subjective symptom testimony.  As discussed below, the ALJ satisfied this standard.

The ALJ's first reason for discounting plaintiff's subjective symptom testimony was that plaintiff's treatment and treatment notes were inconsistent with her assertion that she was totally disabled.  Specifically, the ALJ observed that there were "no restrictions recommended by any

treating doctor" after the Commissioner's last favorable decision and there was no evidence of "significant treatment for her severe impairments." (A.R. 31.)  The ALJ noted that treatment notes suggested plaintiff received "no active treatment for her depression, anxiety, and spine disorders [after] 2004, even though she received regular treatment for other conditions such as [a] urinary tract infection and asthma." (*Id.* 31, 494-526, 561-80.)  The ALJ also found no evidence that plaintiff had "taken any narcotic based pain relieving medications in spite of the allegations of quite limiting pain and there is no evidence of the use of any medications designed to treat psychiatric or mental symptoms." (*Id.* 31, 494-526, 561-80.)  The ALJ reasoned that, given plaintiff's allegations of "totally disabling symptoms, one might expect to see some indication in the treatment records of restrictions placed on the [plaintiff] by the treating doctor" or that plaintiff would have done more to seek treatment. (*Id.* 31.)  Plaintiff's failure to seek treatment for allegedly disabling impairments was a clear and convincing reason for discounting her subjective symptom testimony. *See* Orn, 495 F.3d at 638 ("[I]f a claimant complains about disabling pain but fails to seek treatment . . . an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated.  In the case of a complaint of pain, such failure may be probative of credibility[.]"); *see also* Burch, 400 F.3d at 681 (upholding ALJ's discounting of claimant's credibility due partly to the claimant's lack of consistent treatment and characterizing the claimant's lack of motivation to seek treatment as powerful evidence of the limited severity of her pain).

The ALJ's second reason for discounting plaintiff's subjective symptom testimony was that she made inconsistent statements.  For example, the ALJ noted that plaintiff testified in 2011 that she had been receiving psychotherapy for about two years, but in 2010, she told Dr. Bagner that she was not seeing a psychiatrist or counselor and had never received psychiatric treatment. (A.R. 31; *see also id.* 63-64 (plaintiff's testimony), 532, 535 (plaintiff's statements to Dr. Bagner).) The ALJ also observed that plaintiff's testimony regarding her inability to "perform chores" -- namely, cooking and laundry -- contradicted written evidence that she does chores every day. (A.R. 31; *see also id.* 75 (plaintiff's testimony), 353 (plaintiff's description of her daily activities);

1  438 (plaintiff's neighbor stated in 2002 that plaintiff did the laundry and the dishes).)  Similarly,

2  plaintiff reported that her "depression has caused her to become isolated and . . . to not want to

3  care for her personal dress, etc." (A.R. 29, 304), but she told Dr. Bagner that she is able to "dress

4  and bathe herself," "run errands and shop," and "manage money" and that she has "good"

5  relationships with her family and friends. (*Id.* 533, 535.)  Plaintiff's inconsistent statements were

6  a clear and convincing reason for discrediting her testimony.  *See* Orn, 495 F.3d at 636.

8       The ALJ's third reason for discounting plaintiff's subjective symptom testimony was that

9  plaintiff's activities of daily living were inconsistent with her allegation that she was totally

10 disabled. (A.R. 30-31.)  As stated above, an ALJ is allowed to consider a claimant's daily activities

11 in assessing a claimant's credibility. Orn, 495 F.3d at 636; Tommasetti v. Astrue, 533 F.3d 1035,

12 1041 (9th Cir. 2008).  However, "[t]he mere fact that a plaintiff has carried on certain daily

13 activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any

14 way detract from her credibility as to her overall disability.  One does not need to be 'utterly

15 incapacitated' in order to be disabled." Webb v. Barnhart, 433 F.3d 683, 688 (9th Cir. 2005)

16 (quoting Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001)).  Here, the ALJ found that

17 plaintiff's allegations of debilitating pain (*see, e.g.*, A.R. 76-78) were inconsistent with her

18 statements that she takes her son to school and picks him up, does unspecified chores, goes to

19 church, and occasionally drives. (A.R. 353, 533, 535, 946.)  It is not clear, however, that this level

20 of activity is inconsistent with plaintiff's claimed limitations, particularly given her statements that

21 she rarely, if ever, drives alone, spends part of the morning lying down, and spends most of her

22 day at home.  *See* Garrison, 759 F.3d at 1016 (only if the claimant's level of activity were

23 inconsistent with her claimed limitations would those activities have any bearing on her

24 credibility); *see also id.* (claimant's ability to talk on the phone, prepare meals once or twice a day,

25 occasionally clean one's room, and, with assistance, care for one's child, all the while taking hours-

26 long rests is consistent with an inability to function in a workplace environment).  Nevertheless,

27 to the extent that the ALJ may have erred in discrediting plaintiff's subjective symptom testimony

28 partly on the basis of her daily activities, the error is harmless, because the ALJ cited other clear

1    and convincing reasons for her credibility determination.  *See* <u>Carmickle</u>, 533 F.3d at 1162-63.

2    Thus, the ALJ did not err in rejecting that plaintiff's subjective symptom testimony.

3

4    **IV.   The ALJ Properly Determined Plaintiff's RFC.**

5

6    Plaintiff also contends that the ALJ failed to take into account all of plaintiff's exertional and

7    non-exertional severe limitations in determining her RFC.  (Joint Stip. at 42-47.)  Specifically,

8    plaintiff contends that the ALJ erred by failing to take into account the "pain in her feet, pain in

9    her lumbar spine, pain with range of motion in the cervical spine, limited range of motion in the

10    lumbar spine," as well as her anxiety and depression, in determining her RFC.  (*Id.* at 44.)

11

12    An ALJ is required to consider all of the limitations imposed by a claimant's limitations, even

13    those that are not severe.  Carmickle, 533 F.3d at 1164.  "Even though a non-severe 'impairment

14    standing alone may not significantly limit an individual's ability to do basic work activities, it may --

15    when considered with limitations or restrictions due to other impairments -- be critical to the

16    outcome of a claim.'"  *Id.* (quoting Social Security Ruling 96-8p (1996)).  Where the ALJ has

17    properly considered all of the limitations for which there is record support, however, the ALJ's RFC

18    determination will not be overturned so long as the ALJ applied the correct legal standard and the

19    RFC assessment is supported by substantial evidence.  *See* Bayliss v. Barnhart, 427 F.3d 1211,

20    1217 (9th Cir. 2005).

21

22    Here, the ALJ found that plaintiff had the residual functional capacity to perform less than

23    light work, limiting plaintiff to, *inter alia*:  lifting or carrying no more than ten pounds frequently

24    and twenty pounds occasionally; sitting, standing, or walking for no more than six hours a day;

25    and performing only limited to moderately complex tasks with up to four to five step instructions

26    in an object oriented setting.  (A.R. 28.)  The ALJ stated that she "considered all symptoms" in

27    making this assessment of plaintiff's RFC.  (*Id.*)  Indeed, she discussed plaintiff's subjective

28    description of her symptoms but, as explained above, found that plaintiff was not credible.  (*Id.*

28-31.)  The ALJ also considered Dr. Grogan's and Dr. Curtis' assessments of plaintiff's limitations but again, as discussed above, found that their assessments were not entitled to great weight, because they were contradicted by independent evidence in the record and by the opinions of medical experts Drs. Landau and Malancharuvil.  (*Id.* 30-33.)  The ALJ also considered and rejected the functional assessments of consulting physicians who found that plaintiff could perform "medium exertional work" and had "no severe mental impairments." (*Id.* 33.)  Thus, the ALJ properly considered all of the evidence regarding plaintiff's limitations in determining her RFC and, as discussed extensively above, satisfied the applicable legal standards in declining to accord great weight to some of that evidence.

The Court finds that the ALJ's RFC assessment was supported by substantial evidence. Specifically, the ALJ's RFC assessment was supported by the testimony of medical experts Dr. Malancharuvil and Dr. Landau.  (A.R. 32-33.)  Reports of a non-examining medical expert "may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it."  Andrews, 53 F.3d at 1041.  In determining plaintiff's physical RFC, medical expert Dr. Landau based his assessment on plaintiff's medical records, including a "Complete Orthopedic Consultation" by orthopedic surgeon, Carlos Gonzalez, who considered plaintiff's back and feet impairments.[8]  (A.R. 56-57, 527-31.)  For his part, Dr. Malancharuvil relied on plaintiff's medical records, or lack thereof, as well as the opinion of consultative examiner Dr. Bagner, who considered plaintiff's depression and anxiety.  (*Id.* 66-70.)   Both Dr. Landau's and Dr. Malancharuvil's opinions were supported by plaintiff's failure to seek treatment, other than obtaining medication for her depression and anxiety and Ibuprofen for her pain, after the

---

[8]     On April 9, 2010, Dr. Gonzalez conducted a "Complete Orthopedic Consultation" of plaintiff.  (A.R. 527-31.)  Dr. Gonzalez noted that plaintiff complained of bilateral lower leg pain, back pain, and bilateral feet pain.  (A.R. 527.)  He then conducted an orthopedic and neurological examination, as well as diagnostic studies of plaintiff's lumbar spine, and he concluded that plaintiff's physical examination was within normal limits, and there was no evidence of neurologic deficit.  (A.R. 530.)  Thus, Dr. Gonzalez opined that plaintiff could perform medium level work with no standing, walking, and sitting limitations.  (A.R. 530.)  She could also bend, kneel, stoop, crawl, and crouch on a frequent basis.  (*Id.*)  Dr. Gonzalez opined that plaintiff can perform overhead activities and has full use of her hands for fine and gross manipulative movements.  (*Id.*)

Commissioner's last favorable decision.  In sum, Dr. Landau's and Dr. Malancharuvil's opinions were supported by independent evidence in the record and, therefore, constituted substantial evidence supporting the ALJ's assessment of plaintiff's RFC.  For these reasons, the Court finds no error in the ALJ's determination of plaintiff's RFC.

## V.    The ALJ Posed A Complete Hypothetical Question To The Vocational Expert.

In her final argument, plaintiff contends that the ALJ failed to pose a proper hypothetical to the VE, because her hypothetical did not include the limitations assessed by Dr. Curtis and Dr. Grogan.  (Joint Stip. at 50-52.)  Hypothetical questions posed to the vocational expert must accurately describe "all the claimant's limitations, both physical and mental, supported by the record."  See Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012).  If the ALJ's hypothetical question to the VE does not reflect all of the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy.  Id.; Matthews, 10 F.3d at 681.

Here, the ALJ presented the VE with a hypothetical question about the vocational opportunities for someone meeting the following description:

[A] 48-year-old individual with a high school education . . . who is literate and speaks at least basic English . . . [who's] not a citizen, but she's worked in the United States a number of years . . .  This individual can sit for six hours out of an eight hour day, stand and walk six hours out of an eight hour day with normal workday breaks; occasionally lift twenty pounds, frequently lift ten pounds; occasionally climb stairs, bend, or stoop.  She is precluded from climbing ladders, ropes, or scaffolding, from balancing, working at unprotected heights, around dangerous or fast-moving machinery.  She's precluded from work -- high-production

quota or rapid assembly line work.  She needs an object-oriented environment.  She should not be in charge of safety operations of others.  And she can perform moderately complex tasks, up to four or five steps.

(A.R. 80-81.)

This description is consistent with the ALJ's RFC determination.  (*Compare id. with id.* 28.) Further, for the reasons stated above, the ALJ did not err by discounting Dr. Grogan and Dr. Curtis' assessments of plaintiff's functional limitations, and the ALJ was entitled to exclude from the hypothetical plaintiff's asserted limitations that were not supported by the record.  *See* Hill, 698 F.3d at 1161.  Thus, the ALJ posited a complete hypothetical based on a proper RFC determination supported by substantial evidence of record.  There was, therefore, no error.

## CONCLUSION

For the foregoing reasons, the Court finds that the Commissioner's decision is supported by substantial evidence and is free from material legal error.   Neither reversal of the Commissioner's decision nor remand is warranted.

Accordingly, IT IS ORDERED that Judgment shall be entered affirming the decision of the Commissioner of the Social Security Administration.  IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for the Commissioner.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

DATED: September 30, 2014

MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE